# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GREGORY WAYNE PARRISH** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:10-00091** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 19. Plaintiff has filed a Reply. Docket No. 20.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I.  INTRODUCTION

Plaintiff filed his applications for DIB and SSI on August 1, 2007, alleging that he had been disabled since June 24, 2007, due to heart attack and arthritis in his back.  Docket No. 11, Attachment ("TR"), TR 100, 103, 129.  Plaintiff's applications were denied both initially (TR 53, 54) and upon reconsideration (TR 57, 58).  Plaintiff subsequently requested (TR 71-72) and received (TR 28-50) a hearing.  Plaintiff's hearing was conducted on October 22, 2009, by Administrative Law Judge ("ALJ") Jack B. Williams.  *Id*.  Plaintiff and vocational expert ("VE"), Edward Smith appeared and testified.  *Id*.

On December 10, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 12-23.  Specifically, the ALJ made the following findings of fact:

> 1. The claimant will continue to meet the insured status requirements of the Social Security Act through June 30, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since June 24, 2007, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: coronary artery disease and degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He is able to

lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently. He is able to stand/walk for about a total of six hours per workday. He is able to sit for at least a total of six hours per workday. He must avoid extremes of temperature and humidity. He should avoid high-stress jobs (e.g. jobs requiring high productivity or close interaction with others).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 20, 1965 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 24, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR17-23.

On January 5, 2010, Plaintiff timely filed a request for review of the hearing decision.

TR 10-11. On August 3, 2010, the Appeals Council issued a letter declining to review the case

(TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner.

This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.

---

[1]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: 1) rejecting the assessment of Dr. James Cates, Plaintiff's primary care physician; 2) rejecting Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of his pain and fatigue; and 3) failing to find that Plaintiff meets listing 4.04C. Docket No. 16. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1.  Weight Accorded to Opinion of Plaintiff's Treating Physician

Plaintiff argues that the ALJ erred in rejecting the assessment of Dr. James Cates, Plaintiff's treating physician. Docket No. 16. Plaintiff maintains that Dr. Cates' opinion that Plaintiff was restricted to "less than sedentary work" is "sufficiently supported by medical findings" so as to be entitled to substantial deference. *Id.*

Defendant responds that the ALJ properly addressed Dr. Cates' opinion. Docket No. 19. Defendant contends that the ALJ thoroughly and specifically explained why he rejected Dr. Cates' opinion. *Id.* Defendant further contends that, "the ALJ's analysis provides substantial evidence for his RFC finding, and provides sufficient basis for rejecting Dr. Cates' opinion that Plaintiff was not even able to perform sedentary work." *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

...

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

In the case at bar, Dr. Cates treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions, as long as his opinion was consistent with, and supported by, the evidence of record.

On September 8, 2009, Dr. Cates completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) regarding Plaintiff. TR 435-38. In his assessment, Dr. Cates opined that Plaintiff could lift less than 10 pounds occasionally and frequently; could stand and/or walk less than 2 hours in an 8-hour workday; could sit for about 4 hours in an 8-hour workday (with normal breaks); was limited to pushing and/or pulling minimal forces in upper and lower extremities; and was required to periodically alternate sitting and standing to relieve pain or discomfort. TR 435-36. As support for these findings, Dr. Cates noted "all levels of the lumbar spine have significant degenerative changes" and "recurrent spasm of T & L paraspinal muscles with marked limited ROM (bending/twisting)." TR 436. Dr. Cates additionally indicated that Plaintiff's pain was frequently severe enough to interfere with his attention and concentration; that Plaintiff was incapable of even "low stress jobs"; that he would need to take unscheduled breaks every 15-30 minutes during an 8-hour working day; that he would not need to elevate his legs with prolonged sitting; that his impairments were not likely to produce "good days" and "bad days"; that he was likely to be absent from work more than four times a month due to his impairments or treatment; and that he could occasionally climb (ramps/stairs/ladders/ropes/scaffolds), balance, kneel, crouch, and crawl during an 8-hour workday. TR 436-37. As support for these conclusions, Dr. Cates noted that:

> [Plaintiff] was a small engine mechanic which resulted in frequent bending and twisting causing rapid progressive degeneration of spine. He also has chronic spasm with inability to maintain

comfort except lying down.

TR 437.  Dr. Cates additionally opined that Plaintiff could occasionally reach, handle, and feel, and could frequently finger.  *Id.*  He based this assertion on "persistent lack of movement of spine + ROM also HX of carpal tunnel on L hand."  *Id.*  Dr. Cates finally indicated that Plaintiff could see (with glasses), hear, and speak without limitation; could be exposed to noise and cigarette smoke with no restriction; should avoid concentrated exposure to extreme heat, vibration, and chemicals; should avoid even moderate exposure to extreme cold, dust, humidity/wetness, fumes, odors, dusts, gasses, and soldering fluxes; and should avoid all exposure to hazards (machinery, heights, ...), perfumes, and solvents/cleaners.  TR 437-38.

Recounting Dr. Cates' opinion, the ALJ stated as follows:

> Treating physicians' assessments of the claimant's ability to work have been considered.  On September 8, 2009, Dr. Cates indicated [Plaintiff] is unable to lift even 10 pounds (Exhibit 12f). He indicated the claimant is unable to stand/walk for even a total of two hours per workday. He indicated he is unable to sit for more than a total of four hours per workday. The physician asserted the claimant is unable to perform even "low stress" jobs and that the claimant would be expected to miss work more than four times per month.

TR 19.  The ALJ ultimately determined that "Dr. Cates' assessment . . . is not entitled to great weight because it is simply unsupported by the physician's treatment records or the medical record considered in its entirety."  *Id.*  The ALJ explained that:

> Treatment notes confirm the claimant's coronary artery disease has been managed with medication. Mr. Parrish has not required or undergone open heart surgery. The claimant's degenerative disc disease has likewise not required surgery. He has not been found to have disc herniation or foraminal stenosis. His chronic pain has been conservatively managed with medication. He retains full use of all his extremities and he is able to walk without using an assistive device. Treatment notes indicate his conditions have

11

> remained stable with conservative treatment. In light of this, the severity of the work-related limitations described by Dr. Cates is not supported.

*Id.*

As further support for his determination that Dr. Cates' opinion was unsupported by the evidence of record, the ALJ stated that medical evidence of record confirms that Plaintiff has a history of smoking, hypertension, heavy alcohol consumption, coronary artery disease, and degenerative disc disease, but noted that no treating physician or state agency reviewer/ consultant/examiner had credibly concluded that the claimant had an impairment severe enough to meet or equal a listing. TR 17-18. The ALJ indicated, *inter alia*, that while Plaintiff's coronary artery disease and degenerative disc disease constitute "severe" impairments that more than minimally affect his ability to work,

> [Plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled individual. Although the claimant has received treatment for allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. . . . [Plaintiff's] coronary artery disease and back pain have been managed with medication and other conservative treatments. He has not required surgery. No surgery is imminent or has been recommended. Although the claimant has received various forms of conservative treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. The claimant's assertion that he experiences excruciating back pain when lifting more than five to six pounds is not credible in light of objective medical evidence showing no serious degenerative disc disease or any other condition that would be expected to cause such a degree of pain.

TR 20.

The ALJ additionally noted that:

12

The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

TR 19.

In his decision, the ALJ also referenced Plaintiff's subjective complaints of pain, as well as medical records from Dr. Robert Baker, Jr., Cookeville Regional Medical Center, Tennessee Heart, Satellite Medical, LLC, Dr. Madena Gibson, Dr. Jerry Surber, and Dr. Joe Allison. TR 15-23. The ALJ explained that he accorded "great weight to the well-supported" assessments from State Agency reviewers, Drs. Gibson and Allison, who opined that:

> [Plaintiff was] capable of performing light work requiring the lifting/carrying of up to 20 pounds occasionally and 10 pounds frequently.

TR 18.

The ALJ also indicated that:

> A consultant noted that the claimant should avoid concentrated exposure to extreme cold and extreme heat. Light work would permit [Plaintiff] to avoid exacerbation of back pain and chest pain caused by excessive exertion. Avoidance of temperature extremes, high humidity, and high stress would permit him to avoid exacerbations of symptoms related to coronary artery disease.

TR 18-19.

As can be seen, the ALJ appropriately evaluated the medical evidence of record, and the ALJ's analysis properly demonstrates that Dr. Cates' opinion contradicts other substantial

13

evidence in the record.  As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2).  Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above (*Id.*), and the final decision regarding the weight to be given to the opinions lies with the Commissioner.  20 C.F.R. § 416.927(e)(2).  As such, the Regulations do not mandate that the ALJ accord Dr. Cates' evaluation controlling weight.  Accordingly, Plaintiff's argument fails.

## 2.  Subjective Complaints of Pain

Plaintiff contends that the ALJ "erred in rejecting [his] statements regarding the intensity, persistence and functionally limiting effects of his pain and fatigue."  Docket No. 16.  Plaintiff argues that his testimony is supported by both the "examination and testing of Dr. Cates and Dr. Lenhart [of Cookeville Regional Medical Center]," and that "substantial evidence does not support the decision of the Administrative Law Judge to reject [Plaintiff's] complaints of disabling back pain and fatigue."  *Id.*

Defendant responds that the ALJ properly addressed Plaintiff's credibility and determined that Plaintiff's subjective complaints were not credible.  Docket No. 19.  As support, Defendant notes that "the ALJ devoted no less than two full pages in addressing Plaintiff's credibility" discussing a  "number of credibility-related factors."  *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be

> evidence of an underlying medical condition *and* (1) there must be
> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition *or* (2) the objectively determined
> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d

Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your

pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*,

923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating

symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

ALJ's personal observations, and the objective medical evidence contradict each other.").

Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a

debilitating degree that it prevents an individual from engaging in substantial gainful activity."

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage and effect of medication; and the other

treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)

(*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling

symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir.

1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d

524, 538 (6ᵗʰ Cir. 1981).

In the case at bar, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the . . . residual functional capacity assessment."   TR 20.

After referencing the medical records from Dr. Robert Baker, Jr., Cookeville Regional Medical Center, Tennessee Heart, Satellite Medical, LLC, Dr. Madena Gibson, Dr. Jerry Surber, Dr. Joe Allison, and Dr. James Cates, as well as Plaintiff's subjective allegations of limitations (TR 15-23), the ALJ determined that:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He is able to lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently. He is able to stand/walk for about a total of six hours per workday. He is able to sit for at least a total of six hours per workday. He must avoid extremes of temperature and humidity. He should avoid high-stress jobs (e.g., jobs requiring high productivity or close interaction with others).

TR 18.

With regard to Plaintiff's subjective complaints of pain, the ALJ acknowledged that:

> [Plaintiff] testified that he experienced a heart attack in June 2007. He continues to experience shortness of breath and fatigue. He asserted that he has no stamina at all. He has no strength or durability. He becomes short of breath while walking and when exposed to heat. He becomes short of breath and waking [*sic*] 15 to 20 steps. He awakens tired in the morning. The medication he takes contributes to the fatigue. He confirmed that he has not undergone any additional cardiac testing. He sees Dr. James once per month and keeps an eye on his blood pressure. His blood pressure generally stays very high. Sometimes, when it is particularly high, he experiences cold sweats, weakness, and

nosebleeds. He occasionally experiences chest pain. When he has pain, he takes nitroglycerin. Last year, he took nitroglycerin twice.

TR 20.  The ALJ additionally noted that:

[Plaintiff] testified his back pain has gotten worse over the past few years. His inability to exercise has worsened his back pain. His low back pain causes him to limp. He experiences numbness in his legs. He asserted his pain rates a 7 or 8 on the pain scale. If he sits or stands too long, his pain worsens. He must keep his left buttock off the seat in order to keep it from hurting. He takes hydrocodone and Flexeril for pain. Percocet bothers his stomach too much. The medications ease his pain for about three to four hours. He testified that his girlfriend does his grocery shopping. He does no repair work around the house. He watches television at night. He has problems focusing on television shows. It is difficult for him to tie his shoes. When lying down, he must lie on his side. He asserted that he experiences excruciating pain when he lifts more than five or six pounds.

*Id.*

After evaluating all the objective medical evidence of record, the ALJ discounted Plaintiff's subjective complaints of pain to the extent that they were not consistent with the residual functional capacity findings.  *Id*.  As discussed above, as support for this decision, the ALJ stated that:

[Plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled individual. Although the claimant has received treatment for allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. . . . [Plaintiff's] coronary artery disease and back pain have been managed with medication and other conservative treatments. . . . The claimant's assertion that he experiences excruciating back pain when lifting more than five to six pounds is not credible in light of objective medical evidence showing no serious degenerative disc disease or any other condition that would be expected to cause such a degree of pain.

. . . Although the claimant has testified that he experiences shortness of breath and fatigue, the treatment notes do not indicate that these symptoms are severe enough to prevent him from

> sustaining light or sedentary work. His assertion that he has no
> stamina at all is not supported by treatment notes.

TR 20-21.

As additional support for his determination, the ALJ noted that while testifying at the

hearing, Plaintiff exhibited no signs of pain or discomfort, appeared alert, provided prompt

answers in a "clear, logical, coherent manner," described his vocational and medical histories in

a chronological manner, did not appear to be significantly distracted, and appeared to have

normal hearing, vision, and speech.  TR 21.  The ALJ explained that:

> While the hearing was short-lived and cannot be considered a
> conclusive indicator of the claimant's overall level of pain on a
> day-to-day basis, the apparent lack of discomfort during the
> hearing is given some slight weight in reaching the conclusion
> regarding the credibility of the claimant's allegations and the
> claimant's residual functional capacity.

*Id.*  The ALJ also noted that:

> Although the claimant indicated that his activities of daily living
> are significantly curtailed by his physical condition, the objective
> medical evidence suggests that he would be able to engage in a
> broader range of activities of daily living if he chose to do so.
> Although the claimant has described activities which are fairly
> limited, two factors weigh against considering these allegations to
> be strong evidence in favor of finding the claimant disabled. First,
> allegedly limited daily activities cannot be objectively verified
> with any reasonable degree of certainty. Secondly, even if the
> claimant's daily activities are truly as limited as alleged, it is
> difficult to attribute that degree of limitation to the claimant's
> medical condition, as opposed to other reasons, in view of the
> relatively weak medical evidence and other factors discussed in
> this decision. Overall, the claimant's reported limited daily
> activities are considered to be outweighed by the other factors
> discussed in this decision.

*Id.*  He further asserted that:

> The record reveals that the claimant failed to follow-up on

18

> recommendations made by the treating doctor, which suggests that
> the symptoms may not have been as serious as has been alleged in
> connection with this application and appeal.

*Id.*

As can be seen, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. TR 17-23. The ALJ's decision properly discusses Plaintiff's "activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain." *Felisky*, 35 F.3d at 1039 (*construing* 20 C.F.R. § 404.1529(c)(2)). It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters,* 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly

state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff "overstates his symptoms and limitations in concluding that he is debilitated to the point of being unable to sustain light work," and that, while Plaintiff "is somewhat impaired by chronic back pain and coronary artery disease, he is nonetheless able to sustain light or sedentary work." TR 21. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

### 3. Equaling or Meeting Listing 4.04C

Plaintiff argues that the ALJ erred in not finding that he met listing 4.04C, because Plaintiff had a "70 % or more narrowing of non-bypassed artery resulting in serious limitations in [his] ability to initiate, sustain, or complete ADLs."[2] Docket No. 16. Plaintiff argues that, "other than a summary dismissal that indicated [Plaintiff] had no listed impairment, there was no discussion of listing 4.04 C," and that "the ALJ's total failure to address listing 4.04C is a significant error." *Id.*; Docket No. 20.

Defendant responds that the record indicates that Plaintiff does not meet the "very high standard of limitation" required to meet Listing 4.04C. Docket No. 19. Defendant maintains that while Plaintiff had a "90% ostial stenosis in a diagonal branch" that might allow Plaintiff to

---

[2] "ADLs" stands for activities of daily living.

meet section 1 of Listing 4.04C, "substantial evidence confirms that Plaintiff did not have 'very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living'" and that Plaintiff, therefore, fails to meet section 2 of Listing 4.04C. *Id.* Defendant explains that because Plaintiff must satisfy both sections 1 and 2 in order to meet Listing 4.04C, Plaintiff's argument fails. *Id.*

Plaintiff bears the burden of demonstrating that his impairments either meet or equal those included in the Listing of Impairments ("Listing"). 20 C.F.R. § 416.925; *Evans v. Sec'y of Health and Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to meet the requirements of a listing, a claimant must establish that he or she suffers from a medically determinable impairment(s) that satisfies all of the criteria of the listing. 20 C.F.R. § 416.925(d).

Listing 4.04 contains an introductory paragraph that states: "***Ischemic heart disease***, with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment)," followed by three paragraphs of criteria, one of which must be satisfied, in addition to the criteria set forth in the introductory paragraph. *See* Listing 4.04. Plaintiff argues that he meets the "Paragraph C" criteria of Listing 4.04. Listing 4.04C states as follows:

> C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, *with both 1 and 2*:
>
> 1. Angiographic evidence showing:
>
> > a. 50 percent or more narrowing of a nonbypassed left main

coronary artery; or

b. 70 percent or more narrowing of another nonbypassed coronary artery; or

c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or

d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or

e. 70 percent or more narrowing of a bypass graft vessel; *and*

2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 4.04C (emphasis added). Therefore, in order to meet Listing 4.04C, Plaintiff must establish that: (1) he suffers from ischemic heart disease with symptoms due to myocardial ischemia, (2) while on a regimen of prescribed treatment[3]; (3) he suffers from coronary artery disease demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging; and (4) in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, findings from a medical consultant indicate that performance of exercise tolerance testing would present a significant risk to Plaintiff. Additionally, (5) angiographic evidence must show that Plaintiff has: 50 percent or more narrowing of a nonbypassed left main coronary artery, 70 percent or more narrowing of another nonbypassed coronary artery, 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery, 50 percent or more narrowing of at least two nonbypassed coronary arteries, or 70 percent or more

_____

[3] See 4.00B3 if there is no regimen of prescribed treatment.

narrowing of a bypass graft vessel, (6) which results in very serious limitations in his ability to independently initiate, sustain, or complete activities of daily living.

In the case at bar, the ALJ determined that Plaintiff did not "have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.926 and 416.926)." TR 18. In reaching this determination, the ALJ stated that no State Agency reviewer or treating physician had credibly concluded that Plaintiff had an impairment or combination of impairments severe enough to meet or equal a listing. *Id.* The ALJ acknowledged that:

> The medical record (Exhibit F) confirms [Plaintiff] has histories of smoking, hypertension, heavy alcohol consumption, and coronary artery disease. In June 2007, he experienced an inferior wall myocardial infarction (Exhibit 2F). Cardiac catheterization revealed an ejection fraction of 55-percent; high grade disease of the proximal portion of a PL branch arising from the distal RCA; and a 90-percent ostial stenosis of a diagonal branch (Exhibit 2F). [Plaintiff's] symptoms were managed with medication. He was discharged with aspirin, Zocor, Plavix, and Lopressor. In addition, he was advised to stop smoking and to follow a low-fat, low-cholesterol diet (Exhibits 5F, 7F, 8F). [Plaintiff] has continued to report symptoms (e.g., left arm pain/discomfort) related to coronary artery disease.

TR 17, *citing* TR 189-99, 200-24, 312-16, 325-36, and 337-346.

As discussed above, however, with regard to Plaintiff's activities of daily living, the ALJ stated:

> Although the claimant indicated that his activities of daily living are significantly curtailed by his physical condition, the objective medical evidence suggests that he would be able to engage in a broader range of activities of daily living if he chose to do so.

> Although the claimant has described activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

TR 21.

The ALJ appropriately determined that the longitudinal record did not demonstrate that Plaintiff experienced very serious limitations in his ability to independently initiate, sustain, or complete activities of daily living. *See* TR 21. As the ALJ explained,

> [Plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled individual. Although the claimant has received treatment for allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. . . . his coronary artery disease and back pain have been managed with medication and other conservative treatments. . . .
>
> . . . medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms. He has not alleged any side effects from the use of medications. The medical record indicates that the claimant has remained free of chest pain. He has not experienced another heart attack. Despite having some ongoing back pain, [Plaintiff] has retained full use of his extremities. He has exhibited no neurological deficits. He is able to walk without using an assistive device. Although the claimant has testified that he experiences shortness of breath and fatigue, the treatment notes do not indicate that these symptoms are severe enough to prevent him from sustaining light or sedentary work. His assertion that he has no stamina at all is not supported by treatment notes.

. . .

> [Plaintiff] betrayed no evidence of pain or discomfort while testifying at the hearing. He appeared alert. . . . He did not appear to be significantly distracted by pain or any other condition. . . .

TR 20-21.

The ALJ ultimately determined that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He is able to lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently. He is able to stand/walk for about a total of six hours per workday. He is able to sit for at least a total of six hours per workday. He must avoid extremes of temperature and humidity. He should avoid high-stress jobs (e.g., jobs requiring high productivity or close interaction with others).

TR 18.

While it is uncontested that Plaintiff suffered from heart disease and associated symptoms while on a regimen of prescribed treatment and had a diagnosis of coronary artery disease demonstrated by a 90% ostial stenosis in a diagonal branch, as the ALJ appropriately explained, Plaintiff has failed to demonstrate that he had "very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living," as required by section 2 of Listing 4.04C. Because Plaintiff did not meet all the requisite components of the Listing, Plaintiff failed to establish that he meets Listing 4.04C. Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge