IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| GREGORY WAYNE PARRISH, ) | |
| ) | |
| Plaintiff, ) | No. 2:10-cv-00091 |
| ) | Judge Nixon |
| v. ) | Magistrate Judge Knowles |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Gregory Wayne Parrish's Motion for Judgment on the Administrative Record ("Plaintiff's Motion") (Doc. No. 15), filed with a Brief in Support (Doc. No. 16). Defendant, Commissioner of Social Security filed a Response in Opposition. (Doc. No. 19.) Magistrate Judge Knowles issued a Report and Recommendation ("Report") (Doc. No. 21), recommending that Plaintiff's Motion be denied and that the decision of the Commissioner be affirmed. Plaintiff filed an Objection to the Report. (Doc. No. 22.) Upon review of the Report, and for the reasons stated below, the Court **DENIES** Plaintiff's Motion and **ADOPTS** the Report in its entirety.

I. BACKGROUND

*A. Procedural Background*

On August 1, 2007, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), claiming he had been disabled since June 24, 2007, as a result of a heart attack and arthritis in his back. (Tr. 100, 103, 129.) The Social Security Administration ("SSA") denied Plaintiff's applications initially (Tr. 53-54), and again upon

1

reconsideration (Tr. 57-58). Plaintiff filed a written request for a hearing (Tr. 71-72), which the SSA granted (Tr. 28-50). Administrative Law Judge ("ALJ") Jack B. Williams conducted the hearing on October 22, 2009. (*Id*.) On December 10, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled under the meaning of the Social Security Act. (Tr. 12-23.) Specifically, the ALJ made the following findings of fact:

1. The claimant will continue to meet the insured status requirements of the Social Security Act through June 30, 2011.

2. The claimant has not engaged in substantial gainful activity since June 24, 2007, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: coronary artery disease and degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He is able to lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently. He is able to stand/walk for about a total of six hours per workday. He is able to sit for at least a total of six hours per workday. He must avoid extremes of temperature and humidity. He should avoid high-stress jobs (e.g. jobs requiring high productivity or close interaction with others).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 20, 1965 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 24, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*Id.*)

On January 5, 2010, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 10-11.) The Appeals Council adopted the ALJ's decision on August 3, 2010, thereby rendering that decision the final decision of the Commissioner. (Tr. 1-3.) On September 15, 2010, Plaintiff filed this action for judicial review of the Commissioner's final decision, under 42 U.S.C. § 405(g). (Doc. No. 1.)

On February 2, 2011, Plaintiff filed the instant Motion (Doc. No. 15) and a Brief in Support of the Motion (Doc. No. 16). Defendant filed a Response to the Motion on April 12, 2011. (Doc. No. 19.) On August 29, 2011, Magistrate Judge Knowles issued his Report, recommending Plaintiff's Motion be denied. (Doc. No. 21.)

On September 12, 2011, Plaintiff asserted three objections to the Report. (Doc. No. 22.) Specifically, Plaintiff objects to the Magistrate's recommended findings that:

1. The ALJ properly evaluated Plaintiff under listing 4.04C.
2. The ALJ gave proper weight to the opinion of Dr. James Cates.
3. The ALJ appropriately evaluated Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of his pain and fatigue.

(Doc. No. 22.)

    *B. Factual Background*

Plaintiff, who was born on May 20, 1965 and was forty-four years old at the time of his administrative hearing, has a high school education and past relevant work experience as a car salesman and mechanic. (Tr. 32-33, 130, 136, 144.) Plaintiff filed for DIB and SSI benefits on

3

August 1, 2007. (Tr. 100, 103, 129.) Plaintiff alleged disability with an onset date of June 24, 2007 due to coronary artery disease and degenerative disc disease. (Tr. 53, 55, 19.) Plaintiff also has a history of smoking, hypertension, and heavy alcohol consumption. (Tr. 191, 248.)

Plaintiff suffers from degenerative disc disease due to a March 12, 1994 motor vehicle accident that occurred when he was driving while intoxicated. (Tr. 191.) The accident resulted in multiple trauma and fracture of the lower lumbar transverse processes at the L2, L3, and L4 vertebrae. (Tr. 192.) After the accident, he complained of low back pain that was improving with physical therapy, ultrasound therapy, and medication. (Tr. 192.) At the time of the administrative hearing, Plaintiff's low back pain continued to be treated with medication, and Plaintiff reported that he still experiences back pain. (Tr. 245, 285, 288-89.)

On June 10, 2007, Plaintiff went to Cookeville Regional Medical Center complaining of chest pain and pain is his left arm. (Tr. 204-05.) Plaintiff was admitted with a diagnosis of inferior wall myocardial infarction and two vessel coronary artery disease. (*Id.*) Cardiac catheterization revealed a ninety percent ostial stenosis of a diagonal branch. (Tr. 210.) A critical stenosis was seen in a small caliber distal branch of the right coronary artery, and was judged to not be amenable to coronary intervention without high risk for complications. (*Id.*) The stenosis was at least ninety-five percent. (Tr. 209.) The left main coronary artery had diffuse calcification with at least a thirty to forty percent stenosis, and a moderate caliber diagonal artery had an ostial ninety percent stenosis. (Tr. 210.) Additionally, the first obtuse marginal artery had a proximal fifty percent stenosis in a small caliber vessel. (*Id.*)

On July 30, 2007 Plaintiff went to Dr. Michael Lenhart to follow up on his heart condition. (Tr. 314.) Dr. Lenhart found that Plaintiff had an ejection fraction of fifty-five percent; secondary to high-grade disease of the proximal portion of a PL branch arising from the

4

distal RCA; and residual ostial stenosis in the diagonal branch. (Tr. 315.) Plaintiff's cardiac symptoms have been managed with medication, as Plaintiff was discharged with prescriptions for aspirin, Zocor, Plavix, and Lopressor. (Tr. 316.) As of July 30, 2007, Plaintiff has continued to report symptoms related to coronary artery disease, such as left arm pain and discomfort. (Tr. 315.)

On August 6, 2007, Plaintiff was evaluated by Dr. James Cates at the Satellite Medical Center. (Tr. 250.) Dr. Cates found that Plaintiff had back pain, joint pain, joint swelling, stiffness, and arthritis. (*Id*.) Plaintiff was diagnosed with lumbar radiculopathy and carpal tunnel syndrome. (*Id*.) A CT scan of the spine performed in August of 2007 revealed posterior disc bulges at all levels of the lower lumbar spine without evidence of central canal stenosis or nerve root impingement. (Tr. 243.) Dr. Cates referred Plaintiff to the Pain Management Center at St. Mary's Health System on August 30, 2007. (Tr. 242.) Dr. Cates, however, continued to treat Plaintiff with narcotic pain medication for his back pain. (Tr. 257.)

In February of 2008, Plaintiff returned to Tennessee Heart for hypertension and left arm pain. (Tr. 326.) He was advised to decrease the number of cigarettes he smoked per day, was started on the medication Lisinopril, and was instructed to have his blood pressure checked and a fasting lipid profile. (Tr. 326-29.) In addition, he was advised to limit his salt intake and to follow a low-fat, low-cholesterol diet. (Tr. 329.)

At a consultative physical examination performed on April 9, 2008, Plaintiff denied having chest pain, but reported numbness, burning, and tingling of the hands and feet. (Tr. 348.) The examination found that Plaintiff had blood pressure of 170/104; clear lungs; decreased mobility; voluntary mobility of the lumbar spine; and no spasms of the lumbar spine. (Tr. 348-50.) Plaintiff was diagnosed with status-post myocardial infarction and back pain status-post

5

motor vehicle accident. (Tr. 349.) Additionally, on January 29, 2008, a state agency medical consultant found Plaintiff capable of performing light work requiring the lifting/carrying of up to twenty pounds occasionally and ten pounds frequently. (Tr. 318.) Another state agency medical consultant noted on May 27, 2008 that Plaintiff should avoid concentrated exposure to extreme cold and extreme heat. (Tr. 355.) The second consultant found that light work would permit Plaintiff to avoid exacerbation of back pain and chest pain caused by excessive exertion. (*Id.*) The second consultant found that avoidance of temperature extremes, high humidity, and high stress would permit Plaintiff to avoid exacerbation of symptoms related to coronary artery disease. (*Id.*)

During an office visit that took place on August 1, 2008, Dr. Cates noted that Plaintiff was leaning forward in order to avoid back spasms. (Tr. 412.) Plaintiff reported that he had experienced pain and swelling in his legs prior to his visit with Dr. Cates. (*Id.*) On September 8, 2009, Dr. Cates indicated that Plaintiff was unable to lift ten pounds, was unable to stand or walk for a total of two hours per workday, unable to sit for more than a total of four hours per workday, could only perform low-stress jobs, and that Plaintiff would be expected to miss work more than four times per month. (Tr. 435-38.)

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing

6

Case 2:10-cv-00091 Document 23 Filed 03/30/12 Page 6 of 18 PageID #: 567

court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

*A. Plaintiff objects to the Magistrate Judge's recommendation that the ALJ properly found that Plaintiff did not meet the requirements of Listing 4.04C.*

Plaintiff asserts that he meets the requirements for listed disabilities under 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.04C, and that the Report erred in finding that his ailments did not satisfy the Listing. (Doc. No. 22 at 1.) It is well-settled that a claimant for disability benefits must prove that an impairment meets all of the requirements of a particular listing. *See,*

7

*e.g., Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2009). In order to meet the requirements of Listing 4.04C, Plaintiff must show:

> Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:
> 1. Angiographic evidence showing:
>    a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
>    b. 70 percent or more narrowing of another nonbypassed coronary artery; or
>    c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
>    d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
>    e. 70 percent or more narrowing of a bypass graft vessel; and
> 2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. Part 404, Subpart P, App. 1, Listing 4.04C.

The Court finds that Plaintiff might satisfy the first prong of Listing 4.04C, as Plaintiff was diagnosed as having a ninety percent ostial stenosis in a diagonal branch. (Tr. 210.) However, there is substantial evidence in the record to support the finding that Plaintiff does not satisfy the second prong of Listing 4.04C, which requires a showing of very serious limitations in Plaintiff's ability to independently initiate, sustain, or complete activities of daily living.

Plaintiff contends that he has very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living. (Doc. No. 22 at 2-3.) In support of that assertion, Plaintiff points to his testimony that he has no strength, durability, or stamina, and that he becomes short of breath while walking and when exposed to heat. (Tr. 34-35.) He also testified that his low back pain causes him to limp, if he sits or stands too long his pain worsens, and that he experiences excruciating pain when he lifts more than five or six pounds. (Tr. 39,

42.) He further testified that his girlfriend does his grocery shopping, he does no repair work around the house, and that it is difficult for him to tie his shoes. (Tr. 40.) Plaintiff also objects to the ALJ's reliance on the conservative nature of medical treatments that Plaintiff has received in order to justify his inability to meet the Listing's requirements. (Doc. No. 22 at 2.)

The Court finds that there is evidence in the record that supports the ALJ's ultimate decision regarding Plaintiff's inability to meet the requirements of Listing 4.04C. Evidence in the record demonstrates that Plaintiff is not seriously limited in his ability to independently initiate, sustain, or complete activities of daily living. Plaintiff has admitted that he is able to care for his personal needs without any assistance. (Tr. 151.) Plaintiff stated that he does some cleaning and laundry, and goes grocery shopping for light items. (*Id.*) Plaintiff further testified that he only requires assistance with cleaning if it involves moving heavy objects, such as furniture. (*Id.*) Evidence that a claimant possesses the capacity to care for himself, such as the ability to shop and clean, lends support to an ALJ's finding that the claimant does not have a marked limitation on his activities of daily living or social functioning. *See Hogg*, 987 F.2d at 333; *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 150 (6th Cir. 1990). The Court finds that Plaintiff's statements regarding his activities of daily living serve as substantial evidence for a finding that Plaintiff possesses the capacity to care for himself and that his ability to complete a range of daily living and social functioning activities is not seriously limited.

Evidence from Plaintiff's medical record also supports the ALJ's finding. In reviewing Plaintiff's medical record, the Court agrees with the ALJ that Plaintiff's "treatment notes do not indicate that these symptoms are severe enough to prevent him from sustaining light or sedentary work." (Tr. 21.) The Court further agrees with the ALJ that Plaintiff's claim that "he has no stamina is not supported by treatment notes." (*Id.*) As the ALJ notes, it does not appear from the

record that Plaintiff has had significant cardiac problems after his inpatient stay from June 10-12, 2007. (Tr. 204-11.) In fact, when Plaintiff was discharged on June 12, 2007, he was advised that he needed to be under observation for another twenty-four hours, but Plaintiff left the hospital against medical advice. (Tr. 204.) Moreover, Plaintiff testified that pain from his heart condition had only caused him to take nitroglycerin on two occasions "[i]n the last couple of years." (Tr. 37.) This is consistent with Plaintiff's denial of experiencing chest pains in April of 2008. (Tr. 348-349.)

Because Plaintiff has failed to demonstrate that he has "very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living," Plaintiff is unable to meet the requirements of Listing 4.04C. Therefore, Plaintiff's objections to the Magistrate's Report must fail. Despite Plaintiff's restrictions, the Court finds that the record as a whole contains substantial evidence to support the ALJ's finding that Plaintiff's abilities to perform activities of daily living are not seriously limited, and therefore his condition does not satisfy Listing 4.04C.

> B. *Plaintiff objects to the Magistrate Judge's recommendation that the ALJ gave proper weight to the opinion of Dr. James Cates.*

A "treating source" is one who has provided the claimant with medical treatment or evaluation and who has had an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. Generally, the opinions of treating physicians are entitled to greater weight than the opinions of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). If the opinion of the treating physician as to the nature and severity of the claimant's conditions is supported by accepted clinical and laboratory diagnostic tests and is not

10

inconsistent with other substantial evidence from the record, it will have controlling weight. *Rogers*, 378 F.3d at 242.

In determining the weight to accord a treating physician's opinion, the ALJ must consider "a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Id.* When discounting the opinion of the treating physician, the ALJ must provide "good reasons" that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). The less consistent an opinion is with the record, the less weight it will be given. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Deciding what weight to give to competing evidence, such as contradicting opinions by multiple treating physicians, is an administrative finding for which the final authority resides with the Commissioner. *See* 20 C.F.R. § 416.927(e); *Walker v. Sec'y Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992).

Plaintiff now claims that the ALJ improperly rejected the assessment given by Dr. Cates, Plaintiff's primary care physician, who claims that Plaintiff was restricted to sedentary work. (Doc. No. 22 at 3.) The Court, however, finds that there is substantial evidence in the record to justify giving Dr. Cates's opinion less weight because it is contradicted by other evidence in the record.

In his Objection to the Report, Plaintiff cites a to CT scan taken in August of 2007, which showed posterior disc bulges at all levels of the lower lumbar spine without evidence of central stenosis or nerve root impingement. (*Id.*) Plaintiff argues that this CT scan supports Dr. Cates's

opinion. (*Id.*) However, even if Dr. Cates had relied on the CT scan in forming his opinion regarding Plaintiff's residual functioning capacity, the Court finds that his opinion is contradicted by substantial evidence in the record, and that the ALJ was justified in according Dr. Cates's opinion less weight. *See Hogg*, 987 F.2d at 331.

The ALJ ultimately determined that "Dr. Cates' assessment . . . is not entitled to great weight because it is simply unsupported by the physician's treatment records or the medical record considered in its entirety." (Tr. 19.) Moreover, the ALJ wrote that:

> Treatment notes confirm the claimant's coronary artery disease has been managed with medication. Mr. Parrish has not required or undergone open heart surgery. The claimant's degenerative disc disease has likewise not required surgery. He has not been found to have disc herniation or foraminal stenosis. His chronic pain has been conservatively managed with medication. He retains full use of all his extremities and he is able to walk without using an assistive device. Treatment notes indicate his conditions have remained stable with conservative treatment. In light of this, the severity of the work-related limitations described by Dr. Cates is not supported.

*Id.* The Magistrate Judge concluded that the ALJ properly assessed Dr. Cates's opinion because Plaintiff's medical treatment notes indicated that Plaintiff's conditions remained stable with conservative treatment. (Doc. No. 21 at 13-14.) The Magistrate Judge therefore recommended a finding that the ALJ did not err in failing to adopt some of Dr. Cates's opinions because they were inconsistent with Plaintiff's course of medical care. (*Id.*)

As further support for his determination that Dr. Cates's opinion was unsupported by the evidence in the record, the ALJ stated that medical evidence of record confirmed that Plaintiff has a history of smoking, hypertension, heavy alcohol consumption, coronary artery disease, and degenerative disc disease, but noted that no treating physician or state agency reviewer, consultant, or examiner had credibly concluded that the claimant had an impairment severe enough to meet or equal a listing. (Tr. 17-18.)

12

Furthermore, in denying Plaintiff's disability claim, the ALJ determined that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He is able to lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently. He is able to stand/walk for about a total of six hours per workday. He is able to sit for at least a total of six hours per workday. He must avoid extremes of temperature and humidity. He should avoid high-stress jobs.

(Tr. 18.) By contrast, the ALJ stated that in reaching his RFC determination, he gave great weight to the "well-supported State agency reviewer/findings" of Drs. Madena Gibson and Joe G. Allison, both of whom opined that Plaintiff was able to perform light work. (Tr. 317-24, 351-58.) The ALJ stated that:

> medical consultants found [Plaintiff] capable of performing light work requiring the lifting/carrying of up to 20 pounds occasionally and ten pounds frequently. A consultant noted the claimant should avoid concentrated exposure to extreme cold and extreme heat. Light work would permit the claimant to avoid exacerbation of back pain and chest pain caused by excessive exertion. Avoidance of temperature extremes, high humidity, and high stress would permit him to avoid exacerbations of symptoms related to coronary artery disease.

(Tr. 19.) Rather than issue conclusory opinions, both physicians, especially Dr. Allison, cited medical evidence of record upon which they relied. (*See* Tr. 318-19, 358.) Although Dr. Allison opined that Plaintiff was "partially credible," he still was of the opinion that Plaintiff could perform light work. (Tr. 358.) The Court finds that Dr. Allison's opinion, which was accorded great weight by the ALJ, is further supported by Plaintiff's own report that he does some cleaning and laundry and goes grocery shopping for light items, noting that he only requires assistance with cleaning if it involves moving of heavy objects, such as furniture. (Tr. 151.) The Court further notes that in his decision, the ALJ also referenced medical records from Dr. Robert Baker, Jr., Cookeville Regional Medical Center, Tennessee Heart, Satellite Medical, LLC, and Dr. Jerry Surber. (Tr. 15-23.)

13

The Court finds that the ALJ appropriately evaluated the medical evidence of record, and the ALJ's analysis properly demonstrates that Dr. Cates's opinion contradicts other evidence in the record. When the evidence is conflicting, it is within the ALJ's purview to decide what weight is given to competing evidence. *See Walker*, 980 F.2d at 1070. Even if there is substantial evidence supporting Plaintiff's claims, so long as there is substantial evidence contradicting those complaints, the ALJ is justified in giving them less weight. *See Hogg*, 987 F.2d at 331. Because the ALJ's findings were supported by substantial evidence, the Court finds that the ALJ gave proper weight to Dr. Cates's opinion.

> C. *Plaintiff objects to the Magistrate Judge's recommendation that the ALJ appropriately evaluated Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of his pain and fatigue.*

Plaintiff argues that it was an error for the ALJ to reject his subjective statements regarding the intensity, persistence, and functionally limiting effects of his pain and fatigue. (Doc. No. 22 at 4.) During his October 22, 2009 hearing before the ALJ, Plaintiff testified that he becomes short of breath while walking and when exposed to heat (Tr. 34), his low back pain causes him to limp (Tr. 39), his pain rates a seven or an eight on the pain scale (*id.*), he takes Hydrocodone and Flexeril for pain (Tr. 41), and he experiences excruciating pain when he lifts more than five or six pounds (Tr. 42).

Pain can only be considered disabling if there is objective medical proof of the alleged pain or of a condition severe enough that it could reasonably be expected to cause the alleged disabling pain. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). A claimant's allegations of disabling pain may not be rejected on the medical evidence alone, but rather the Commissioner must consider all relevant evidence, including the claimant's daily activities, the claimant's statements of symptoms, and evidence from treating or consulting

14

physicians.  *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994) (quoting 20 C.F.R. § 404.1529).  In so doing, the ALJ may look to household and social activities in which the claimant engaged.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) (citing *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990)).  Even when the objective medical evidence supports the claimant's subjective complaints, an ALJ is not required to credit those complaints.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  An ALJ's findings on the claimant's credibility are entitled to deference because the ALJ "is charged with the duty of observing a witness's demeanor and credibility."  *Walters*, 127 F.3d at 531; *see also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981).  If the ALJ rejects the claimant's testimony regarding pain, the ALJ must clearly state the reasons for doing so.  *Felisky*, 35 F.3d at 1036.

There is substantial evidence for the ALJ's finding that Plaintiff's pain and fatigue do not sufficiently limit Plaintiff's ability to do basic work activities such that Plaintiff should be found disabled.  In his Objection to the Report, Plaintiff recites his subjective complaints from the hearing.  (Doc. No. 22 at 4-5.)  Despite Plaintiff's complaints of shortness of breath and fatigue as a result of his heart attack, Plaintiff admitted that he was able to care for his personal needs without any assistance.  (Tr. 151.)  Plaintiff stated that he did some cleaning and laundry, and went grocery shopping for light items.  (*Id.*)  Plaintiff further noted that he only required assistance with cleaning if it involved moving heavy objects, such as furniture.  (*Id.*)

Furthermore, the ALJ noted that "the claimant's assertion that he experiences excruciating back pain when lifting more than five to six pounds is not credible in light of objective medical evidence showing no serious degenerative disc disease or any other condition that would be expected to cause such a degree of pain."  (Tr. 20.)  The ALJ explained: "Although

15

the claimant has received treatment for allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature." (*Id*.) The ALJ continued, stating that, "although the claimant has testified that he experiences shortness of breath and fatigue, the treatment notes do not indicate that these symptoms are severe enough to prevent him from sustaining light or sedentary work." (Tr. 21.) Furthermore, the ALJ noted that "the record reveals that the claimant failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal." (*Id*.)

The Magistrate Judge found that the ALJ had addressed Plaintiff's testimony and his subjective claims in great detail and chose to rely on medical findings that were inconsistent with Plaintiff's subjective complaints of pain. (Doc. No. 21 at 19.) The Magistrate Judge noted, however, that it is "within the ALJ's province" to do so. (*Id.*) The Court agrees. Even when there is objective medical evidence supporting the Plaintiff's complaints, the ALJ is not obliged to heed them. *See Jones*, 336 F.3d at 476 ("[n]evertheless, an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."). The ALJ's finding that the Plaintiff's medical treatment undermines the credibility of his subjective complaints of back pain and fatigue is supported by substantial evidence, specifically, by objective medical evidence detailing the conservative course of medical treatment Plaintiff has received.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not credible to the extent that they are inconsistent with the . . . residual functional capacity assessment." (Tr. 20.) Based on

16

medical records from Dr. Robert Baker, Jr., the Cookeville Regional Medical Center, Tennessee Heart, Satellite Medical, LLC, Dr. Madena Gibson, Dr. Jerry Surber, Dr. Joe Allison, and Dr. James Cates, the ALJ determined that Plaintiff has the residual functional capacity to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He is able to lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently. He is able to stand/walk for about a total of six hours per workday. He is able to sit for at least a total of six hours per workday. He must avoid extremes of temperature and humidity. He should avoid high-stress jobs (e.g., jobs requiring high productivity or close interaction with others).

(Tr. 18.) While Plaintiff's testimony regarding pain and fatigue supports his claims, the ALJ relied on objective medical evidence that was inconsistent with Plaintiff's statements in making his RFC determination. (*See* Tr. 20-21.)

The ALJ explained that contradictory medical evidence was determinative in his assessment of Plaintiff's credibility. (Tr. 20-21.) The Court finds that there is substantial evidence to support the ALJ's judgment that Plaintiff's pain—including Plaintiff's shortness of breath and fatigue—was not disabling, as evidenced by his ability to participate in various daily household activities. (*See* Tr. 151.) This Court must accord deference to the ALJ's assessment of Plaintiff's credibility. *See Walters*, 127 F.3d at 531. Although there is evidence supporting Plaintiff's claims, it is within the ALJ's discretion to rely on evidence that contradicts those claims in rendering a decision. *See Jones*, 336 F.3d at 476. The ALJ clearly stated his reasons for discounting Plaintiff's claims of disabling pain. Specifically, the degree of pain from which Plaintiff alleges he suffers is not consistent with the medical conditions from which Plaintiff suffers, or Plaintiff's treatment notes. As such, the ALJ's findings will not be disturbed on this point.

## IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Report, **DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of the Commissioner. This Order terminates this Court's jurisdiction over the above-styled action, and the case is **DISMISSED**.

It is so ORDERED.

Entered this the ___30th___ day of March, 2012.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT